Filed 8/14/25  P. v. Ahmad CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MANSOOR SYED AHMAD,<br><br>    Defendant and Appellant. | E084540<br><br>(Super.Ct.No. CVRI2401286)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Samuel Diaz, Jr., Judge.  Affirmed.

Mansoor Syed Ahmed, in pro. per., for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

<u>INTRODUCTION</u>

Upon discharge from a mental health facility, defendant and appellant Mansoor Syed Ahmad was subject to a firearms prohibition under Welfare and Institutions Code[1] section 8103, subdivision (f)(1).  He filed for relief from the prohibition, which the trial court denied.  Defendant appeals that denial, in propria persona.  We affirm.

<u>PROCEDURAL BACKGROUND</u>[2]

On March 8, 2024, defendant filed a Request For Hearing For Relief From Firearms Prohibition under section 8103, subdivision (f)(5).  The matter was calendared for hearing on April 3, 2024.  When the trial court called the case, defendant said he thought his medical records would be useful for the court to review, and he asked the prosecution to obtain the audio recording of the 911 call associated with his admission into the facility.  The court continued the hearing for approximately 90 days, as agreed by the parties, so defendant could gather his evidence.

On July 23, 2024, the court conducted the hearing.  At the outset, the prosecution noted that it obtained a report from the Department of Justice indicating the grounds for defendant's firearms prohibition.  He stated the report showed that, on January 15, 2024, defendant was placed on a 72-hour hold under section 5150[3] and was therefore subject to

---

[1] All further statutory references will be to the Welfare and Institution Code, unless otherwise indicated.

[2] Defendant includes a factual background in his opening brief.  We note that the factual background is not supported by citations to the record and is not relevant to the issue on appeal.  Thus, this opinion will not include such factual background.

[3] Section 5150, subdivision (a), provides, in relevant part:  "When a person, as a result of a mental health disorder, is a danger to others, or to themselves . . . a peace

*[footnote continued on next page]*

a five-year ban on possessing firearms.  Then, on January 23, 2024, he was committed under 5250[4] and subjected to a lifetime ban.  The prosecutor submitted that report as evidence to the court.[5]  The prosecutor also explained that defendant declined to sign the release of the records relating to his commitments, and therefore the prosecution did not have any medical records to present in court.

Defendant confirmed that he refused to release his medical records, explaining that he asked if the district attorney had medical staff to review the medical records, and the district attorney said he could not answer that; thus, defendant said he would not give his

---

officer, professional person in charge of a facility designated by the county for evaluation and treatment, member of the attending staff . . . of a facility designated by the county for evaluation and treatment, . . . may, upon probable cause, take . . . the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services. The 72-hour period begins at the time when the person is first detained."

[4] Section 5250 lists conditions for certification.  It provides, in relevant part, as follows:  "If a person is detained for 72 hours under the provisions of Article 1 (commencing with Section 5150) . . . and has received an evaluation, the person may be certified for not more than 14 days of intensive treatment related to the mental health disorder . . . under the following conditions:  (a) The professional staff of the agency or facility providing evaluation services has analyzed the person's condition and has found the person is, as a result of a mental health disorder . . . a danger to others, or to themselves. . ."

[5] The document submitted was a "Certification of Firearms Prohibition" and reflects that the custodian of records from the California Department of Justice Bureau of Firearms conducted a search of defendant in the Mental Health Firearm Prohibition System.  The document reflects that defendant was prohibited on January 13, 2024 (Report No. 132632862), and the other indicating he was prohibited on January 15, 2024 (Report No. 132638121).  The document reflects the custodian of records certified that "the attached records are complete, true, and exact copies."  The "attached records" do not appear to be included in the appellate record.  During the hearing, the prosecutor apparently misread the dates on the report as being January 15, 2024, and January 23, 2024.

medical records over "if they don't know how to review [them]." The trial court stated that because defendant was committed under 5150 to a psychiatric hospital, it could "make reasonable inferences from what [it] received that [he was] a danger to [himself] or to others." Defendant interrupted the court by saying, "I was not." The court said. "That's not evidence." It then noted that defendant was placed on a 5250 hold and inferred that the doctors "must have had very good reasons to do so." The court also noted that defendant was entitled to contest the 5250 commitment, but it did not see any records that he did so. The court stated: "If you're not able to provide any records, what I have is right now in front of me, one, in the last three, four months, since January, you were hospitalized because you were a danger to yourself and to others. That's what I have in front of me by way of evidence and making [*sic*] reasonable inferences from that evidence." The court then asked if defendant had any evidence to present and asked him to address why he disagreed with its initial finding that he was a danger to himself or others, pursuant to sections 5150 and 5250.

Defendant thereafter testified under oath that, in the 911 call, he requested to voluntarily admit himself to a hospital for psychiatric issues. He said, at that time, he was diagnosed with bipolar schizoaffective disorder. However, the psychiatrist he was currently seeing said he was strictly bipolar. The court said that if defendant would release his medical records stating that diagnosis, it would review them and added, "But at this time, I have no information." Defendant replied, "I'm going to explain what

4

exactly happened, but you've got to understand, like, how did it go from me requesting treatment, admitting myself, to me being forced to lose my gun rights?"

The prosecutor proceeded to explain that, when someone is admitted to a psychiatric hospital, even voluntarily, the staff must do an assessment to determine whether a 72-hour hold is needed. Here, a doctor made a finding that defendant was a danger to himself or others and placed a 5250[6] hold on him. The prosecutor argued that bipolar disorder and schizoaffective disorder were serious conditions that needed to be closely monitored. He concluded that, in the absence of information of some error, he had proven by a preponderance of the evidence that defendant could not operate a firearm in a safe manner. Noting the absence of any evidence that defendant was not a danger to himself or others, or that he could handle a firearm safely, the trial court denied defendant's request to remove the firearms prohibition.

## DISCUSSION

### The Court Properly Denied Defendant's Request for Relief

Defendant claims he was not a danger to himself or others at the time the police arrived after his call to 911, and "there was no probable cause to detain him for this purpose." He then argues that, under section 5150, "the probable cause for a psychiatric hold must pertain to mental illness and not a generalized probable cause of criminal activity." Therefore, this court should "reverse the trial court's decision and grant damages." We disagree.

---

[6] We note the initial 72-hour hold was pursuant to section 5150, and the subsequent hold was pursuant to section 5250.

A. *Relevant Law*

"Upon probable cause that a person is a danger to himself or others, that person may be detained in a mental health facility for 72 hours for treatment and evaluation." (*People v. Keil* (2008) 161 Cal.App.4th 34, 38 (*Keil*); § 5150.) Pursuant to section 8103, "[a] person who has been (i) taken into custody as provided in Section 5150 because that person is a danger to themselves or to others, (ii) assessed within the meaning of Section 5151, and (iii) admitted to a designated facility within the meaning of Sections 5151 and 5152 because that person is a danger to themselves or others shall not own, possess, control, receive, or purchase . . . for a period of five years after the person is released from the facility." (§ 8103, subd. (f)(1)(A).) "A person who has been taken into custody, assessed, and admitted . . . and who was previously taken into custody, assessed, and admitted . . . one or more times within a period of one year preceding the most recent admittance, shall not own, possess, control, receive, or purchase . . . a firearm for the remainder of their life." (§ 8103, subd. (f)(1)(B).)

"However, the individual may request a hearing to lift this prohibition." (*People v. Jason K.* (2010) 188 Cal.App.4th 1545, 1553 (*Jason K.*); see § 8103, subd. (f)(5).) At the hearing, the People "bear the burden of showing by a preponderance of the evidence that the person would not be likely to use firearms in a safe and lawful manner." (§ 8103, subd. (f)(6).)

"We apply the substantial evidence standard of review. We affirm if 'substantial evidence supports the court's determination that return of the firearms to appellant would

be likely to result in endangering appellant or other persons.'" (*Keil*, *supra*, 161 Cal.App.4th at p. 38.) "In determining whether a court's ruling is supported by substantial evidence, we view the whole record in a light most favorable to the ruling, resolving all evidentiary conflicts and drawing all reasonable inferences supporting the court's decision." (*Jason K.*, *supra*, 188 Cal.App.4th at p. 1553.)

B. *The Court's Ruling is Supported By Substantial Evidence*

The record contains substantial evidence supporting the court's denial of defendant's request for relief from the firearms prohibition. The undisputed evidence before the court showed the custodian of records from the California Department of Justice Bureau of Firearms conducted a search of defendant in the Mental Health Firearm Prohibition System. The custodian certified that defendant was prohibited from possessing firearms on January 13, 2024 (Report No. 132632862) and then on January 15, 2024 (Report No. 132638121). We note the record on appeal apparently does not contain the actual reports showing that he was prohibited from possessing firearms, pursuant to sections 5150 and 5250, but rather just the custodian's certification that he was. However, those reports appear to have been before the court at the hearing. The prosecution asserted that the record it submitted showed defendant was placed on a 72-hour hold under section 5150 and was therefore subject to a five-year ban on possessing firearms, and defendant was subsequently committed under 5250 and subjected to a lifetime ban. When the court addressed defendant regarding the 5150 and 5250 commitments, it stated the following: "[W]hat I have is right now in front of me,

7

one, in the last three, four months since January, you were hospitalized because you were a danger to yourself and to others. That's what I have in front of me by way of evidence . . ."

Furthermore, there is no dispute that defendant was determined to be a danger to himself or others and that he was subject to firearms prohibitions due to his 5150 and 5250 commitments, as he filed the instant request to have a hearing under section 8103, subdivision (f)(1). Moreover, at the hearing, defendant testified that he called 911 and requested to admit himself to a hospital for psychiatric issues. He testified, at that time, he had been diagnosed with bipolar schizoaffective disorder, and he was currently seeing a psychiatrist who diagnosed him with bipolar disorder. In other words, the evidence before the court established that defendant was determined to be a danger to himself or others and committed under sections 5150 and 5250, was subject to firearms prohibitions, and was currently diagnosed with bipolar disorder and seeing a psychiatrist. Defendant had the opportunity to present evidence from a mental health professional to show he was no longer a danger to himself or others but presented no such evidence.

We note that defendant raises various additional issues and claims in his opening brief, such as the police and the staff at the psychiatric unit harassed/threatened him and such treatment "represents an ADA violation," the police had no probable cause to detain him, and that after he called 911, he should have been put into an ambulance and driven to the nearest hospital for "*voluntary* admission into a psychiatric unit without the firearms ban." Defendant also claims the court did not review the police bodycam

8

footage of his detainment, or the "inside of the patrol vehicle," or the 911 recording. He further states that the officers who detained him did not appear at the hearing. However, defendant fails to explain how these claims show the court erred in denying his request for relief from the firearms prohibition. Thus, we will pass on them without consideration. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 ["'[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.'"].)

Viewing the evidence presented at the hearing in the light most favorable to the court's ruling, as we must, we conclude substantial evidence supports the court's finding that return of firearms would endanger defendant or others.

DISPOSITION

The order denying defendant relief from the firearms prohibition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____

J.


We concur:


McKINSTER _____
          Acting P. J.


MILLER _____
          J.